**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CLEAR IMAGING RESEARCH LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:25-CV-00240-JRG |
| | § | |
| LENOVO GROUP LTD., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Lenovo Group Ltd.'s ("LGL") Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss Direct, Willful, and Indirect Infringement Claims (the "Motion"). (Dkt. No. 17.)  Having considered the Motion, the subsequent briefing, and the documents submitted in support thereof, the Court finds that the Motion should be **DENIED**.

## I. BACKGROUND

Plaintiff Clear Imaging Research LLC ("Clear Imaging") filed suit, accusing LGL of infringing seven U.S. patents.  (Dkt. No. 1.)  The patents pertain to digital image processing technologies that purportedly help correct or avoid blurred images and videos.  (*E.g.*, *id.* ¶¶ 1, 22, 30.)  Clear Imaging asserts that Lenovo- and Motorola-branded laptops, smartphones, and tablets infringe the asserted patents. (*E.g.*, *id.* ¶ 31.)

Defendant LGL is incorporated in Hong Kong and is the parent of certain U.S. entities. (*See* Dkt. No. 17-1 ¶ 2.)  For instance, Lenovo (United States) Inc. ("Lenovo U.S.") and Motorola Mobility LLC ("Motorola") are subsidiaries of LGL.  (*Id.* ¶¶ 1–3; Dkt. No. 17 at 8, 16.)  LGL represents that Lenovo U.S. and Motorola have principal places of business in North Carolina and Illinois, respectively.  (Dkt. No. 17-1 ¶ 6.)

## II.    LEGAL AUTHORITY

### A.    Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 476 (E.D. Tex. 2019). Personal jurisdiction exists over a defendant where a forum state's long-arm statute permits service of process and where assertion of personal jurisdiction does not violate due process. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). Texas' long-arm statute is "coextensive with the Due Process Clause of the Fourteenth Amendment" such that these two inquiries merge. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019).

To satisfy due process when exerting personal jurisdiction over a defendant, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). A defendant has "minimum contacts" with a forum if it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)). Stream-of-commerce-based personal jurisdiction attaches where "defendants, acting in consort, placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id.* at 1566. The existence of an "established distribution channel into the forum" is a "significant factor" when evaluating the strength of a non-movant's stream-of-commerce theory. *See id.* at 1565 n.15.

2

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). To bear that burden, "[the plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the [d]efendant." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). That is, "[w]ithout discovery and a record on jurisdiction, this court must resolve all factual disputes in the plaintiff's favor." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010); *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1347–48 (Fed. Cir. 2016).

In addition, a court may exercise jurisdiction under Federal Rule of Civil Procedure 4(k)(2) if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Come de Equip. Medico*, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009)). This rule "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* (quoting *Synthes*, 563 F.3d at 1295).

### B.   Failure to State a Patent Infringement Claim

"A pleading that states a claim for relief must contain," *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defendants may "test[] the sufficiency of the pleadings" against this standard by moving under Federal Rule of Civil Procedure 12(b)(6). To survive such a test, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Regional circuit law governs a motion to dismiss under Rule 12(b)(6), and in the Fifth Circuit such motions

are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 34–35 (Fed. Cir. 2024).

A complaint must place the alleged patent infringer on notice of what activity is being accused of infringement. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). However, the plaintiff is not required to prove its case at the pleading stage. *Id.* Assessing the sufficiency of pleadings is a context-specific task; simpler technologies may require less detailed pleadings, while more complex technologies may demand more. *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

Alleging pre-suit knowledge of asserted patents may sufficiently support a claim for willful infringement at the pleading stage. *See Raytheon Co. v. Cray, Inc.*, No. 2:16-CV-00423-JRG-RSP, 2017 WL 1362700, at *5 (E.D. Tex. Mar. 12, 2017). The intent necessary to support a claim of induced infringement "can be found where there is evidence of active steps taken to encourage direct infringement . . . . [such as by] 'advertising an infringing use.'" *Dialect, LLC v. Bank of Am., N.A.*, No. 2:24-CV-00207-JRG, 2024 WL 4980794, at *4 (E.D. Tex. Dec. 4, 2024) (cleaned up). An allegation that accused products "'are designed for a use that is both patented and infringing, and that has no substantial non-infringing use' . . . . is sufficient to support a plausible claim [of contributory infringement]." *Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, 2021 WL 12310942, at *4 (E.D. Tex. Nov. 18, 2021) (citation omitted).

## III.    ANALYSIS

### A.    The Court Has Personal Jurisdiction over LGL

This Court recently considered whether it has personal jurisdiction over LGL under (1) a "stream of commerce" personal jurisdiction theory and (2) Rule 4(k)(2) in *Eirog*, *Truesight*, *Universal Connectivity Technologies*, and *AX Wireless*. In those cases, the Court found that the plaintiffs sufficiently "allege[d] that LGL at least acts in concert with its wholly owned subsidiaries

4

to deliver the accused products into the Texas market under a stream of commerce theory." *Eirog Innovations Ltd. v. Lenovo Grp. Ltd.*, No. 2:24-CV-00239-JRG, 2024 WL 4519763, at *4 (E.D. Tex. Oct. 17, 2024); *Truesight Commc'ns LLC v. Lenovo Grp. Ltd.*, No. 2:24-CV-00031-JRG, 2024 WL 5110057, at *1 (E.D. Tex. Dec. 13, 2024); *Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-CV-00449-JRG, 2024 WL 4519760, at *3 (E.D. Tex. Oct. 17, 2024); *see also AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-CV-00280-RWS-RSP, 2023 WL 7105701, at *3 (E.D. Tex. Sept. 6, 2023). The Court further examined and found jurisdiction under Rule 4(k)(2). *Eirog*, 2024 WL 4519763, at *6–7; *Universal Connectivity Techs.*, 2024 WL 4519760, at *5–6; *Truesight*, 2024 WL 5110057, at *2; *AX Wireless*, 2023 WL 7105701, at *4–5.

Clear Imaging's allegations regarding personal jurisdiction are substantially similar to those addressed in the Court's recent LGL cases. As in those cases, Clear Imaging alleges that LGL, "directly and/or through subsidiaries," makes, uses, imports, offers to sell, and/or sells "products that infringe the Asserted Patents." (Dkt. No. 1 ¶ 17.) Clear Imaging likewise asserts that LCL facilitates "placing such products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used . . . in the Eastern District of Texas." (*Id*. ¶ 4.) LGL also allegedly "directs the Accused Products into established distribution channels within this District and the U.S. nationally" via its website, Lenovo.com. (*Id*.)

The Court finds that LGL's motion to dismiss under Rule 12(b)(2) should be denied for the same reasons as those given in its prior Orders. *Eirog*, 2024 WL 4519763, at *4–7; *Universal Connectivity Techs.*, 2024 WL 4519760, at *3–6; *Truesight*, 2024 WL 5110057, at *1–2; *AX Wireless*, 2023 WL 7105701, at *4–5. Regardless of whether factual disputes remain as to whether LGL created, controls, or directs its subsidiaries to place the allegedly infringing products into

such a stream of commerce, Clear Imaging has sufficiently alleged that LGL at least acts in concert with its subsidiaries to deliver the accused products into this district or the United States under a stream-of-commerce theory.  (Dkt. No. 1 ¶¶ 3–17.)  Accepting Clear Imaging's allegations as true and viewing factual conflicts in favor of Clear Imaging given the procedural posture of the Motion, Clear Imaging has made a *prima facie* showing of personal jurisdiction over LGL based on its specific contacts with the forum, and, alternatively, under Rule 4(k)(2) based on LGL's contacts with the United States as a whole.  *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).[1]

Despite the Court's previous holdings, LGL argues that it has not directed any business activities at Texas, that LGL has no role in any stream of commerce, that exercising specific jurisdiction over LGL would be unreasonable, and that Rule 4(k)(2) does not provide an alternative basis for personal jurisdiction.  (Dkt. No. 17.)  However, LGL's arguments were substantively considered and rejected by the Court in *Eirog*, *Truesight*, *Universal Connectivity Technologies*, and *AX Wireless*.  The Court declines LGL's invitation to revisit such analysis.

LGL's revised declaration regarding personal jurisdiction issues does not change the calculus.  LGL contends that its Motion should be granted because "each allegation in [the] complaint is directly contradicted by a declaration from Mr. Adrian Chim."  (Dkt. No. 17 at 1–2.)  However, that declaration confirms that LGL disputes Clear Imaging's facts alleging that the Court has personal jurisdiction, and the Court "*must* resolve all factual disputes in [Clear Imaging]'s

---

[1] Here, the Federal Circuit declined to take up review of this Court's previous similar determinations of jurisdiction over LGL, at least given the initial stage of the case.  *See In re Lenovo Group Ltd.*, Nos. 2025-111, -112, 2025 WL 685914 (Fed. Cir. Mar. 4, 2025).

favor" in this case.  *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (emphasis added).

### B.     Clear Imaging's Complaint Sufficiently Pled Patent Infringement Claims

Beyond personal jurisdiction issues, LGL argues that Clear Imaging fails to sufficiently allege that LGL directly, willfully, and indirectly infringes the asserted patents.  (Dkt. No. 17 at 22–28.)  As explained below, the Court finds that Clear Imaging sufficiently alleges infringement under each of these theories.

#### i.     Clear Imaging's Complaint sufficiently alleged direct infringement.

LGL moves to dismiss Clear Imaging's claims for direct infringement.  It stresses that LGL is a foreign holding company that "does no business in the United States" and that Clear Imaging only offered conclusory allegations concerning "*unidentified third parties*."  (Dkt. No. 17 at 22 (emphasis in original).)  To that effect, LGL identifies that direct infringement requires conduct "within the United States" and that LGL is a Hong Kong holding company.  (*Id.*)

Clear Imaging responds that LGL ignores its allegations that LGL itself committed acts of direct infringement in the United States.  (Dkt. No. 27 at 19–20.)  It also contends that the Complaint identifies that LGL is responsible for infringing acts by "Lenovo US, Lenovo Tech., and Motorola," LGL's subsidiaries.  (*Id.*)

The Court finds that Clear Imaging has sufficiently alleged direct infringement.  That LGL denies repeated allegations that it directly infringes the asserted patents in the United States does not sanction granting LGL's Motion.  (*See, e.g.*, Dkt. No. 1 ¶¶ 3, 31 ("[Defendant] . . . continues to . . . sell, and/or import certain products . . . including . . . the Moto Edge+ . . . and Lenovo Tab P11 . . . that directly infringe . . . ."), 36 ("By . . . selling and/or importing into the United States the Accused Products, [Defendant] . . . is liable for infringement . . . ."), 42, 47, 53, 58, 64, 69, 75, 80, 86, 91, 97, 102 (cited in Dkt. No. 27 at 19–20).)  Clear Imaging, rather, has pled enough facts

to state a claim that LGL *itself* directly infringes the asserted patents, which the Court accepts as true at this juncture. *See Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, 697 F. Supp. 3d 635, 649 (E.D. Tex. 2023) ("While BMW denies that it conducts these activities in the United States, . . . the complaint identifies that BMW 'itself' engages in these activities. . . . Accepting these well-pled allegations as true, Arigna has pled enough facts to state a claim for infringement.").

Similarly, there's no mystery regarding "*unidentified third parties*" as LGL posits. Clear Imaging instead specifically identified that LGL is responsible for direct infringing acts of LGL's "Lenovo US, Lenovo Tech., and Motorola" subsidiaries. (Dkt. No. 1 ¶¶ 3–17 ("'[P]rincipal activities' for Lenovo US as '[d]istribution of IT products,' the 'principal activities' for Lenovo Tech. as '[p]rovision of IT services and distribution of IT products,' and the 'principal activities' for Motorola as '[d]eveloper, owner, licensor and seller of communications hardware and software.' . . . At the direction and control of Lenovo, U.S.-based subsidiaries (including but not limited to Lenovo US, Lenovo Tech., and Motorola) make, use, import, offer to sell, and/or sell Lenovo-branded and Motorola-branded smartphones and tablets that infringe the Asserted Patents, including in the State of Texas and this District.") (citations omitted) (cited in Dkt. No. 27 at 19–20).) The Court agrees with Clear Imaging that such allegations lead to a plausible inference that the identified acts of LGL's subsidiaries are attributable to LGL. *See Arigna Tech.*, 697 F. Supp. 3d at 650 ("The Court, accepting the well-pled allegations as true, finds that Arigna has pled enough to state a claim for infringement based on BMW's control of its subsidiaries.").

    ii.    <u>Clear Imaging's Complaint sufficiently alleged pre-suit willful infringement.</u>

LGL moves to dismiss Clear Imaging's pre-suit willful-infringement claims. Alleging pre-suit knowledge of the asserted patents may sufficiently support a claim for willful infringement at the pleading stage. *See Raytheon Co. v. Cray, Inc.*, No. 2:16-CV-00423-JRG-RSP, 2017 WL

8

1362700, at *5 (E.D. Tex. Mar. 12, 2017) ("Because Raytheon's allegations concerning knowledge of the patents-in-suit are sufficient, a proper claim for willfulness has been made."), *report & recommendation adopted*, *Raytheon Co. v. Cray, Inc.*, No. 2:16-CV-00423-JRG-RSP, 2017 WL 1344900, (E.D. Tex. Apr. 12, 2017); *see also Signode Indus. Grp. LLC v. Samuel, Son & Co.*, No. 2:24-CV-00080-JRG, 2024 WL 3543408, at *2 (E.D. Tex. July 25, 2024) ("To sufficiently plead pre-suit willful infringement, a plaintiff must plausibly allege that the defendant knew of an asserted patent before the plaintiff filed the lawsuit.").

LGL contends that Clear Imaging's claims for pre-suit willful infringement should be dismissed because, at best, Clear Imaging provided notice of infringement of asserted patents in a letter to Lenovo U.S., not Defendant LGL, before filing the Complaint.  (Dkt. No. 17 at 23–24.) LGL also contends that Clear Imaging failed to plead facts showing culpable conduct as required to support a willfulness claim.  (*Id.*)

Clear Imaging responds that it adequately pled willful infringement, at least because LGL received a notice of infringement letter dated May 20, 2021 that listed asserted patents years before the Complaint was filed in 2025 and continued to infringe thereafter.  (Dkt. No. 27 at 20–22.)  It cites another letter from 2023 that Clear Imaging allegedly sent to LGL that accuses LGL of infringing all asserted patents.  (*Id.* (citing Dkt. No. 1-18).)

The Court finds that Clear Imaging's Complaint sufficiently pled willful infringement.  In its Complaint, Clear Imaging details that it sent LGL letters identifying various products and functionality that infringed Clear Imaging's patents.  (Dkt. No. 1 ¶¶ 24–28.)  The parties thereafter allegedly had numerous discussions, and LGL allegedly continued to infringe after these several discussions.  (*Id.*)  Such detailed notices and allegations support Clear Imaging's willfulness claim at this juncture.  *See Raytheon*, 2017 WL 1362700, at *5.

While it is unclear whether LGL or only another LGL subsidiary received notice of infringement, the Court resolves such factual disputes in Clear Imaging's favor; Clear Imaging has provided sufficient allegations to support a theory of willful infringement. *See Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-CV-1112-JRG, 2015 WL 1431946, at \*5 (E.D. Tex. Mar. 30, 2015) ("[T]aking all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff, the Court finds that ContentGuard's pleadings are sufficiently plausible to plead a claim of willful infringement. ").

iii.    Clear Imaging's Complaint sufficiently alleged induced infringement.

LGL also moves to dismiss Clear Imaging's induced-infringement claims.   Induced infringement requires knowledge of the existence of a patent that is infringed.  *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 640 (2015) (liability under Section 271(b) "can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement'") (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).

LGL argues that the Complaint neither alleged that LGL had pre-suit knowledge of asserted patents nor showed LGL had a specific intent to induce infringement of the asserted patents.  (Dkt. No. 17 at 26).

As to pre-suit knowledge of the asserted patents, Clear Imaging's Complaint sufficiently alleged that LGL had pre-suit knowledge of the asserted patents for the same reasons noted above with respect to willful infringement.  *Supra* § III.B.ii.

As to whether Clear Imaging has sufficiently pled a specific intent to infringe the asserted patents, LGL argues that Clear Imaging did not plead any facts showing that LGL had a specific intent to induce any third party to infringe the Asserted Patents.  (Dkt. No. 17 at 25.)  It reasons that Clear Imaging's vague references to online instruction and technical support for the accused

10

products from Lenovo U.S. or Motorola are not nearly enough to state a claim for inducement. (*Id.* at 26.)

Clear Imaging, pointing to its Complaint, argues that LGL induced infringement by "advertis[ing] that the Accused Products, such as the Moto Edge+, include video stabilization functionality" and instructing users to infringe the asserted patents by teaching them "how to record videos with video stabilization on Moto Edge+ smartphones." (Dkt. No. 27 at 24.) It advances similar allegations for HDR, night vision, and portrait mode accused features. (*Id.*)

The Court agrees with Clear Imaging that it has sufficiently pled a specific intent to infringe the asserted patents. Indeed, the intent necessary for a claim of "inducement can be found where there is evidence of active steps taken to encourage direct infringement . . . . [such as by] 'advertising an infringing use.'" *Dialect, LLC v. Bank of Am., N.A.*, No. 2:24-CV-00207-JRG, 2024 WL 4980794, at *4 (E.D. Tex. Dec. 4, 2024) (cleaned up and citations omitted); *see also Uniloc USA, Inc. v. Motorola Mobility LLC*, 2017 WL 3721064, at *4 (E.D. Tex. May 15, 2017). Here, Clear Imaging has done just that with respect to the accused products and the at-issue video stabilization, HDR, night vision, and portrait mode features.

To require more would improperly force Clear Imaging to "prove its case at the pleading stage." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012). Although it is unclear whether LGL or only another LGL subsidiary had a specific intent to infringe the asserted patents, the Court resolves such factual disputes in Clear Imaging's favor at this early juncture. Accordingly, Clear Imaging has alleged sufficient facts to support a theory of induced infringement.

> iv.    Clear Imaging's Complaint sufficiently alleged contributory infringement.

To round out its Motion, LGL also moves to dismiss Clear Imaging's contributory-infringement claims. Contributory infringement occurs if a party "offers to sell or sells within the

United States or imports into the United States a component . . . constituting a material part of [a patented] invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c). The component cannot be "a staple article or commodity of commerce suitable for substantial noninfringing use." *Id.*

LGL argues that the Complaint neither alleged pre-suit knowledge of asserted patents nor showed facts that LGL does anything that would make it a contributory infringer. (Dkt. No. 17 at 26).

As to pre-suit knowledge of the asserted patents, Clear Imaging's Complaint sufficiently alleged that LGL had pre-suit knowledge of the asserted patents for the same reasons noted above with respect to willful infringement. *Supra* § III.B.ii.

As to facts regarding LGL's potential liability as a contributory infringer, LGL argues that Clear Imaging's contributory infringement claims are "[c]onclusory" and "boilerplate" and thus warrant dismissal. (Dkt. No. 17 at 26–28.) Specifically, LGL insists that the Complaint recites the legal elements of contributory infringement but fails to plead any facts supporting such a theory. (*Id.*).

Clear Imaging disagrees, identifying that its Complaint recites that "the identified hardware and/or software components and functionality in Lenovo's Moto Edge+ smartphones with video stabilization constitute a material part of the inventions claimed in the '788 Patent, are especially made or adapted to infringe the '788 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 20." (Dkt. No. 27 at 25–26.) Clear Imaging makes similar representations for each asserted patent. (*Id.* (citing Dkt. No. 1 ¶¶ 35, 46, 57, 68, 79, 90, and 101).)

Clear Imaging is correct, and the Court accordingly denies LGL's Motion regarding contributory infringement. An allegation that the accused products "'are designed for a use that is both patented and infringing, and that has no substantial non-infringing use' . . . . is sufficient to support a plausible claim [of contributory infringement]." *Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, 2021 WL 12310942, at *4 (E.D. Tex. Nov. 18, 2021) (citation omitted). Here, Clear Imaging alleged just that. (Dkt. No. 1 ¶¶ 35, 46, 57, 68, 79, 90, and 101.) Although it is unclear whether LGL or only another LGL subsidiary was a contributory infringer, the Court, again, resolves such factual disputes in Clear Imaging's favor at this early juncture.

## IV.    CONCLUSION

For the reasons explained above, the Court finds that the Motion (Dkt. No. 17) should be and hereby is **DENIED**.

So ORDERED and SIGNED this 31st day of March, 2026.

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE